UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| PAMELA TAYLOR, | ) |
| | ) |
| Plaintiff, | ) Case: 2:25-cv-02211 |
| | ) |
| v. | ) |
| | ) |
| NORTH FORK FRESH MEX, LLC d/b/a | ) |
| QDOBA MEXICAN EATS, | ) Jury Trial Demanded |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Pamela Taylor ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against North Fork Fresh Mex, LLC d/b/a Qdoba Mexican Eats ("Defendant"), and in support states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. as amended, ("ADA") seeking redress for Defendant's discrimination of Plaintiff's disability and Defendant's retaliation against Plaintiff for engaging in a protected activity under the ADA.

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 as the ADA, 42 U.S.C. §12101 *et seq*. is a federal statute.

3. Venue of this action properly lies in the Central District of Illinois, Urbana Division, pursuant to 28 U.S.C. §1391(b) insofar as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to jurisdiction under the ADA of 1990, 42 U.S.C. §12101, *et seq*. have been satisfied.

5. Plaintiff filed a charge of employment discrimination on the basis of disability [and retaliatory discharge] with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. [Plaintiff received a Notice of Dismissal from the IDHR (attached hereto as Exhibit "C").]

8. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

9. Plaintiff, Pamela Taylor, is a natural person, over 18-years-of-age, who at all times relevant to the allegations in this Complaint resided in Champaign County, Illinois.

10. Defendant, North Fork Fresh Mex, LLC d/b/a QDOBA Mexican Eats, whose address is 711 S Wright St, is a limited liability company specializing in the Restaurant industry that at all times material to the allegations in this Complaint was doing business in and for Champaign County, Illinois.

11. Plaintiff was employed by Defendant as an "employee" within the meaning of the ADA, 42 U.S.C. §12111(4).

12. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. §12111(5)(A).

## BACKGROUND FACTS

13. Plaintiff worked for Defendant as an Assistant General Manager from on or around August 2024, until she was unlawfully terminated on or around April 2025.

14. Plaintiff suffers from a left hip condition that substantially affects her daily life.

15. Regardless of Plaintiff's disability, she was able to perform the essential functions of her job with or without reasonable accommodations.

16. Plaintiff is a "qualified individual" as defined under the ADA.

17. Plaintiff worked for Defendant for fourteen years up until 2022.

18. In 2022, the store Plaintiff worked at was closed.

19. Plaintiff returned to work in or around August 2024 as the Assistant General Manager at a brand new QDOBA location.

20. This new location was operated as a franchise.

21. Plaintiff was instrumental in opening this store from the ground up and hiring and training all the employees.

22. Plaintiff regularly worked over fifty hours per week.

23. Beginning in or around December, 2024, Plaintiff began experiencing serious problems with her left hip.

24. On or around January 2025, Plaintiff enrolled in the employer sponsored health insurance plan.

25. By late February 2025, Plaintiff's hip condition had worsened.

26. Plaintiff was having difficulty with her mobility.

27. Plaintiff used accrued paid time off to take off work due to her disability.

28. On or around mid-March 2025, Plaintiff communicated with the district manager, Zachary Staber, via text message to inquire about her eligibility under the Family and Medical Leave Act (FMLA).

29. Plaintiff's manager, Zachary, informed her that because she had not been employed continuously for six months, FMLA eligibility would not apply.

30. Plaintiff reminded him that she had started in August of 2024, which was over seven months prior, and that she believed she met the six-month requirement.

31. Zachary then said that he would check with Human Resources ("HR") and get back to her.

32. He then said that even if she did not apply for FMLA, "it will just be a verbal between us," indicating that they had made a verbal agreement regarding her time off.

33. He then said to let Defendant know when she would be able to come back with no restrictions and that they will "make something happen."

34. He then assured Plaintiff that her job would be held for her.

35. Plaintiff never received further clarification from him or HR, and she reasonably understood that her medical leave had been approved and that she would retain her employment.

36. Before Plaintiff's scheduled hip replacement surgery, Plaintiff obtained approval for the surgery from her medical provider and her employer-sponsored insurance.

37. Plaintiff also paid the deductible of $2,600.

38. On or around March 31, 2025, Plaintiff texted Zachary confirming that she would be returning to work, and he responded that he was looking forward to it.

39. Plaintiff underwent hip replacement surgery on April 14, 2025, and kept Zachary updated regularly via text during her recovery.

40. Zachary consistently responded positively, expressing that they were looking forward to her return.

41. On or around April 15, 2025, he informed Plaintiff that another employee was managing the store as they were unsure about her return, timeline, and restrictions.

42. Plaintiff advised that her best estimate was three to four weeks.

43. Plaintiff's recovery process was painful and challenging, relying on a walker to assist with her mobility.

44. Despite these difficulties, Plaintiff was making significant progress and anticipated being capable of returning and fully performing her essential job duties.

45. On or around April 29, 2025, Plaintiff updated Zachary that her surgical staples had been removed and she anticipated returning to work in roughly two weeks.

46. On or around May 5, 2025, Plaintiff informed him that she planned to return the week of May 19, 2025.

47. Throughout this entire recovery process, Zachary never communicated or indicated any adverse change in Plaintiff's employment status.

48. Plaintiff kept up constant communication regarding her timeline of recovery and return to work.

49. However, during the week of May 12, 2025, Plaintiff discovered that her employment had been terminated without her knowledge when her medical provider notified her that her employer sponsored insurance coverage was cut off effective April 1, 2025.

50. This termination resulted in Plaintiff being liable for approximately $98,000 in medical expenses for the surgery, follow-up appointments, and therapy.

51. Plaintiff was physically able and willing to return to work by late May 2025.

52. However, instead of providing her with reasonable accommodations during her recovery process, Defendant unlawfully terminated her employment, discontinued her insurance benefits, and retaliated against Plaintiff as a result of her disability and medical leave.

53. Plaintiff was fully capable of hiring someone to fill Plaintiff's position temporarily.

54. Defendant refused to engage in an interactive process to determine reasonable accommodations for Plaintiff due to her disability.

55. Defendant terminated Plaintiff without communicating any reasoning.

56. Plaintiff had not received any prior write-ups or disciplinary actions.

57. As a result of the termination, Plaintiff has had to pay significant amounts of money out of pocket and continues to struggle with her disability.

58. The actions by the Defendant show a clear link between Plaintiff's termination and her disability, surgery, and request/utilization of time off.

59. Ultimately, on or about April 2025, Plaintiff was terminated on the basis of Plaintiff's disability and for engaging in a protected activity as described above.

60. The purported justification for termination was unlawful discrimination on the basis of disability or because Defendant perceived Plaintiff as disabled.

61. Plaintiff can show that she engaged in statutorily protected activity—a necessary component of her retaliation claim—because she requested reasonable accommodations.

## **COUNT I**
### **Violations of the Americans with Disabilities Act**
### **(Disability-Based Discrimination)**

62. Plaintiff repeats and re-alleges paragraphs 1-61 as if fully stated herein.

63. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

64. Plaintiff met or exceeded performance expectations.

65. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

66. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

67. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

68. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

69. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

70. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

71. has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of the Americans with Disabilities Act
### (Retaliation)

72. Plaintiff repeats and re-alleges paragraphs 1–63 as if fully stated herein.

73. Plaintiff is a member of a protected class under 42 U.S.C. §12101, *et seq*.

74. During Plaintiff's employment with Defendant, Plaintiff requested accommodations.

75. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

76. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting accommodations, thereby violating the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

77. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

78. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

79. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay with interest;

b. Payment of interest on all back pay recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

  f.  Reasonable attorneys' fees and costs;

  g.  Award pre-judgment interest if applicable; and

  h.  Award Plaintiff any and all other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests that all issues be submitted to and determined by a jury. Dated this 22nd day of July 2025.

            */s/ Chad W. Eisenback*
            **CHAD W. EISENBACK, ESQ.**
            IL Bar No.: 6340657
            **SULAIMAN LAW GROUP LTD.**
            2500 S. Highland Avenue, Suite 200
            Lombard, Illinois 60148
            Phone (331) 307 - 7632
            Fax (630) 575 - 8188
            ceisenback@sulaimanlaw.com
            *Attorney for Plaintiff*